FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★   APR 1 2 2006   ★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

P.M. _____
TIME A.M. _____

-------------------------------------------------X

MICHELINE HAMMOUDA,

                       Petitioner,

     -against-

UNITED STATES OF AMERICA,

                       Respondent.

-------------------------------------------------X

02 CV 3103 (SJ)

**MEMORANDUM
AND ORDER**

**APPEARANCES:**

MICHELINE HAMMOUDA
#53922-053
F.C.I. Tallahassee
501 Capitol Circle, N.E.
Tallahassee, FL 32301-3572
Petitioner, *Pro se*

ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
One Pierrepont Plaza
Brooklyn, NY 11201
By:    Peter A. Norling, Esq.
Attorney for Respondent

JOHNSON, Senior District Judge:

      Petitioner Micheline Hammouda ("Petitioner"), acting *pro se*, brings this motion

for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, requesting that the Court

vacate, set aside, or correct her conviction and sentence imposed under criminal docket

number 98 CR 0497. For the reasons stated herein, the Motion is DENIED.

P-049

# BACKGROUND

On June 30, 1998, Petitioner was charged in a superceding indictment for crimes related to the murder of her husband, Waleed R. Hammouda, a taxi-cab driver. On May 19, 2000, Petitioner was convicted after trial by jury of the following: murder for hire and conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958 (Counts 1 and 2) and intentionally committing and threatening physical violence to a person in furtherance of a plan to obstruct and affect commerce ("Hobbs Act robbery") and robbery conspiracy, in violation of 18 U.S.C. § 1951 (Counts 3 and 4). The Court sentenced Petitioner to life imprisonment and five years supervised release for her violations of 18 U.S.C. § 1958, 240 months of imprisonment and three years supervised release for her violations of the Hobbs Act (with the terms running concurrently), and a $400 special assessment.

Petitioner appealed her conviction and sentence to the United States Court of Appeals for the Second Circuit ("Second Circuit"), claiming that the evidence at trial was insufficient to establish the effect on interstate commerce required to support her Hobbs Act convictions, the government had failed to establish beyond a reasonable doubt that Petitioner had conspired to commit Hobbs Act robbery or murder for hire, and her life sentence under 18 U.S.C. § 1958 violated both the Eighth Amendment's bar on

P-049

cruel and unusual punishment and the Equal Protection Clause.[1] Br. for Def-Appellant

Mich. Hamm., at 6-15, 00-1273(L). The Second Circuit rejected these claims on July

11, 2001, and confirmed Petitioner's conviction and sentence. United States v. Issac,

14 F. App'x 81 (2d Cir. 2001). Petitioner did not seek certiorari with the Supreme Court.

Petitioner now seeks relief on collateral review. In her original motion for habeas

relief entered on June 3, 2002, Petitioner raised the following claims: (1) prosecutorial

misconduct, including the prosecution's knowing use of perjured testimony and

fabricated evidence, (2) ineffective assistance Robert Koppelman ("Trial Counsel")

arising from Trial Counsel's failure to interview or subpoena a witness who would have

provided potentially exculpatory testimony, and (3) violation of her Fifth Amendment

Due Process right stemming from the government's failure to provide to petitioner her

trial transcripts, resulting in "severe injustice to the defendant." Pet. § 2255 Mot. at 6-7,

Docket No. 2. On April 12, 2004, Petitioner filed an amendment to her original petition,

enumerating the following additional grounds for vacating her criminal conviction and

sentence: (1) Petitioner was effectively denied her right to challenge the array of grand

jurors and to cross examine witnesses because of a lack of proper federal indictment

procedures (specifically, the failure of the grand jury to record its vote in open court and

to file the certification of concurrence with the Court), (2) Petitioner was arrested by

---

[1] Petitioner's claim of Equal Protection violation was essentially based on the observation that a defendant convicted of committing murder in connection with a drug transaction in violation of 21 U.S.C. § 848(e) may be sentenced to as few as 20 years in prison, whereas the crime for which Petitioner was convicted carried a mandatory life sentence.

P-049

"unknown assailants without a warrant" and improperly detained without an indictment or preliminary hearing, (3) Petitioner received ineffective assistance from Trial Counsel because Counsel behaved unprofessionally in the courtroom in the presence of the jury and refused to allow Petitioner to testify in her own defense, and (4) Petitioner received ineffective assistance from Anthony Ricco ("Appellate Counsel") because Appellate Counsel failed to raise on direct appeal the issue of Trial Counsel's deficient performance (due to an alleged conflict of interest) and failed to introduce evidence concerning Petitioner's frail physical and mental health that would have enabled Petitioner to obtain a mitigated sentence. Petitioner also reiterated her claim of due process violation. Pet. Amend. § 2255 Mot. at 2-7, Docket No. 14.

## DISCUSSION

### I.      Procedural Restrictions

Under 28 U.S.C. § 2255, a sentencing court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." Relief is generally available only for a constitutional error, defect of jurisdiction, or an error of law constituting "a fundamental defect which inherently results in a complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996); see also Hardy v. United States, 878 F.2d 94, 97 (2d Cir. 1989).

Requests for habeas corpus relief are in "tension with society's strong interest in

4

the finality of criminal convictions." Ciak v. United States, 59 F.3d 296, 301 (2d Cir.

1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002); see also

United States v. Frady, 456 U.S. 152, 165 (1982). Accordingly, "the courts have

established rules that make it more difficult for a defendant to upset a conviction by

collateral, as opposed to direct, attack." Id. at 301. Procedural restrictions are one such

obstacle in the path of habeas petitioners.

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed

into law on April 24, 1996, provides in relevant part that:

A one-year period of limitations shall apply to a motion under this section. The
limitation period shall run from the latest of –

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by
> governmental action in violation of the Constitution or laws of the United
> States is removed, if the movant was prevented from making a motion by
> such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the
> Supreme Court, if that right has been newly recognized by the Supreme
> Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented
> could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Relevant to this case, the one-year period of limitation begins to run when the

period for seeking certiorari expires. Clay v. United States, 537 U.S. 522, 532 (2003)

5

(holding that "for federal criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires").

Motions to amend habeas petitions where the one-year statute of limitations has already run are governed by Federal Rule of Civil Procedure 15(c). United States v. Thomas, 221 F.3d 430. 436 (3d Cir. 2000) (holding that "Rule 15(c)(2) applies to § 2255 petitions insofar as a District Court may, in its discretion, permit an amendment to a petition to provide factual clarification or amplification after the expiration of the one-year period of limitations"); see also Fama v. Comm'n of Corr. Srvcs., 235 F.3d 804, 815 (2d Cir. 2000) (relying on Thomas to find that Rule 15(c) also governs § 2254 motions to amend). Therefore, in accordance with Rule 15(c), with the Court's permission, a petitioner may seek to amend an original § 2255 motion for habeas relief, clarifying or amplifying a claim or theory in the petition, but only if (1) the original petition was timely filed and (2) the proposed amendments do not attempt to add new claims or insert new theories into the case. Id. at 436; see also Mayle v. Felix, 125 S. Ct. 2562 (2005) ("Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims.").

Here, Petitioner's original motion for § 2255 relief was in fact timely filed.[2]

---

[2] Petitioner's original motion for § 2255 relief was entered on June 3, 2002 – within the one-year limitations period that had begin to run on October 9, 2001.

P-049

However, because Petitioner seeks by way of her April 12, 2004 amendment to introduce some entirely new claims for relief, the amendment does not relate back with respect to these new claims. Petitioner's allegations of improper federal indictment procedures, improper arrest and detainment, and ineffective assistance of Appellate Counsel do not provide "factual clarification or amplification" on her original claims of prosecutorial misconduct or ineffective assistance of Trial Counsel. Instead, Petitioner raises these issues for the first time in her amendment. As a result, these claims are time-barred by § 2255's statute of limitations.[3]

## B. Procedural Default

As a general rule, § 2255 claims not raised on direct appeal are deemed procedurally defaulted and will not be considered on collateral review unless the petitioner can show either cause for failing to raise the claims and resultant prejudice or

---

[3] Even considered on their merits, Petitioner's amended claims for relief must fail. Petitioner's first additional ground alleges that lack of proper federal indictment procedures effectively denied Petitioner of her rights to challenge the array of grand jurors and to cross-examine witnesses. Even if Petitioner's allegations are true, the petit jury's guilty verdict rendered harmless any errors in the grand jury proceeding. United States v. Mechanik, 475 U.S. 66, 72-73 (1986); United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998). With respect to Petitioner's second additional ground, the criminal docket clearly indicates that an arrest warrant was issued on March 10, 1998, see docket entry dated March 10, 1998 ("Arrest Warrant"), and that on April 22, 1998, Petitioner waived her preliminary hearing, see docket entry dated April 22, 1998 ("Magistrate Arraignment as to Micheline Hammouda"), after which a permanent order of detention was entered. Finally, Petitioner's claim that Appellate Counsel provided ineffective assistance of counsel is also baseless. As will be discussed infra, Trial Counsel did not provide constitutionally-defective assistance, hence Appellate Counsel cannot be faulted for failing to raise on direct appeal any issue regarding Trial Counsel's performance. In addition, given the mandatory nature of Petitioner's sentence under 18 U.S.C. § 1958 and the fact that, as a mandatory sentence, no mitigating factors could have resulted in a reduced sentence, Appellate Counsel's decision not to bring Petitioner's physical and mental health status to the court's attention (assuming that Petitioner had even apprised Counsel of her health situation) seems eminently reasonable, resulted in no prejudice to the Petitioner, and therefore satisfies the analysis prescribed by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) for evaluating ineffective assistance of counsel claims.

7

can show actual innocence. See Bousley v. United States, 523 U.S. 614, 621-22 (1998);

Underwood v. United States, 166 F.3d 84, 87-88 (2d Cir. 1999).[4] A clear exception to

the procedural-default rule, however, is a claim of ineffective assistance of counsel.

Massaro v. United States, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-

counsel claim may be brought in a collateral proceeding under § 2255, whether or not the

petitioner could have raised the claim on direct appeal."); see also United States v. Levy,

377 F.3d 259, 265 (2d Cir. 2004).

The trial record shows that Petitioner did not raise the allegation of prosecutorial

misconduct at trial, and as mentioned, Petitioner did not raise this issue on direct appeal.

Petitioner offers no explanation that might establish "cause" and "prejudice" for the

failure to raise this claim prior to seeking collateral relief. Therefore, applying the rule

of procedural default to Petitioner's motion for habeas relief, Petitioner's claim of

prosecutorial misconduct is procedurally barred.


## II. The Merits

### A.      Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established

a two-part test for determining ineffective assistance of counsel. First, "the defendant

must prove that counsel's representation fell beyond an objective standard of

---

[4] Petitioner does not argue actual innocence, therefore the actual innocence exception will not be addressed further.

8

reasonableness...under prevailing professional norms." Id. at 688. In order to satisfy this first prong of Strickland, Petitioner must overcome the strong presumption that the challenged act or omission may be considered reasonable trial strategy. Id. at 689. Second, the defendant must prove that counsel's performance prejudiced her defense. This requires Petitioner to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694.

Petitioner claims that Trial Counsel provided ineffective assistance, prejudicing the outcome of her trial by: (1) engaging in unprofessional behavior in the courtroom in the presence of the jury. (2) failing to call an exculpatory witness to testify, and (3) prohibiting Petitioner from testifying on her own behalf. Each claim shall be addressed in turn.

1.    *Trial Counsel's Conduct at Trial.*

Petitioner describes Trial Counsel's unprofessional behavior in the courtroom in her April 12, 2004 amendment:

> Robert Koppelman made faces and repeated answers to witnesses all in the presence of the jury. Robert Koppelman was very unprofessional in the court room in the presence of the jury. Mr. Koppelman a [sic] argued with the prosecutor on several occasions which cause the Honorable Sterling Johnson, US District Judge to call both Dwight Holton, Assistant US Attorney and Mr. Koppelman, Attorney for Micheline Hammouda, to the bench for a side bar reprimand. Honorable Sterling Johnson, US District Judge threatened both attorneys with incarceration for misconduct if they did not behave...Dwight Holton, Assistant US Attorney, and Robert Koppelman got into a shoving match in open court before the jury. Mr. Koppelman felt his behavior during the trial

9

was so inappropriate that he apologized to the jury and asked the jury not to hold "his" [*sic*] behavior against (Micheline Hammouda) [*sic*] his client...Defense counsel provided ineffective counsel where he engaged in improper behavior calling his prosecutor a jerk and made faces and repeated answers to witness [*sic*] all in the eyes of the jury. (Pet. § 2255 Amend. Mot. at 4-5.)

As reflected by the trial record, while elements of Petitioner's account are clearly untrue (no threats of incarceration were issued by the Court, nor did shoving matches in the presence of the jury occur), Trial Counsel did apologize to the jury for his "loud," "argumentative,"and "repetitious" acts. Trial Counsel also asked that "if there is anything that I did that you didn't like, well, take it out on me, not on Ms. Hammouda," Trial Tr. at 1982, which tends to support the view that even Counsel himself may have realized that his behavior crossed the boundaries of conventionally-accepted norms of profession.

Nevertheless, in order to prevail on an ineffective assistance of counsel claim, Petitioner cannot simply show that counsel acted unprofessionally. Instead, Petitioner must prove that counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. In other words, Petitioner must show that Trial Counsel's behavior was so prejudicial that it impacted the fairness of her trial and that it is reasonably probable that, had Counsel not made such unprofessional errors, the outcome of the proceeding would have been different.

In this instance, Petitioner has not demonstrated that Trial Counsel's conduct was

P-049

prejudicial enough to warrant setting aside her conviction. In fact, Petitioner herself

admits that Counsel's arguably overzealous representation was successful in obtaining an

acquittal on "the most serious charge." Pet. § 2255 Amend. Mot. at 5. Although Trial

Counsel's acts might have left a poor impression on the jury, whatever prejudice may

have arisen was alleviated by Counsel's apology to the jury for his behavior and his

request that the jury not penalize the Petitioner for his conduct – a request that was

echoed by the Court in its instructions to the jury. Trial Tr. at 2067. Cf. Zafiro v. United

States, 506 U.S. 534, 540-541 (1993) (holding that the type of prejudice that might have

arisen from codefendant's competent and relevant testimony is the type that can be cured

with jury instructions); see also Tesser v. Board of Educ., 370 F.3d 314, 322 (2d Cir.

2004) (agreeing with the District Court's assessment that any potential prejudice that

might have arisen from defense counsel's possibly speculative statements was cured by

jury instructions). And because there is no evidence indicating differently, it must be

presumed that the jury, in fact, comprehended and followed the Court's instruction.

United States v. Downing, 297 F.3d 52, 59 (2d Cir. 2002) ("Absent evidence to the

contrary, we must presume that juries understand and abide by a district court's limiting

instructions."); see also U.S. v. Stewart, 433 F.3d 273, 307 (2d Cir. 2006). Given the

strength and sufficiency of the government's evidence,[5] it cannot be believed that

---

[5] The evidence presented by the prosecution at trial included testimony from an eyewitness (Trial Tr. 813-816), the lawyers and mortgagers involved in the real estate transaction (Trial Tr. at 1040-1075), law enforcement agents (Trial Tr. at 1519-1606, 1609-1623, 1793-1852), several cooperating witnesses who all testified to either hearing the Petitioner make arrangements for the murder of her husband or Petitioner's co-conspirator confessing to the murder for hire (see Trial Tr. at 484-794, 817-1039, and 1662-1778), and

11

Petitioner's conviction was based solely (if at all) on Trial Counsel's unusual behavior: even if Counsel had comported himself in the most professional manner, the jury verdict would have remained the same.[6] Therefore, using the Strickland metric, Counsel cannot be said to have provided ineffective assistance on this issue.

2.     *Trial Counsel's Failure to Call Exculpatory Witness*

Petitioner's additional claim that Trial Counsel provided ineffective assistance by failing to call on an exculpatory witness also fails. In enunciating this ground for relief, Petitioner provides no more than a bare assertion that Trial Counsel failed to pursue a potentially meritorious trial strategy. Without substantive facts to support her allegation, Petitioner fails to overcome the Court's presumption that Counsel's omission was a reasonable trial strategy. As this Court has held, "[t]he decision of whether to call or bypass a particular witness is a question of trial strategy which courts will practically never second-guess." Ozuru v. United States, 95 CV 2241, 1997 WL 124212, at *4 (E.D.N.Y. Mar 11, 1997); see also Skinner v. Duncan, Nos. 02-CV-3430, 03-MISC-0066, 2003 WL 21386032, at *40 (S.D.N.Y. Jun. 17, 2003). Particularly, as in this case, where Petitioner provides absolutely no details to substantiate her claim, prejudice cannot be established. Id. at *4 ("[A] defendant's conclusory allegations about

---

employees of several telephone companies identifying and explaining inculpatory phone records (Trial Tr. at 1040-1075 and 1606-1609).

[6] Petitioner's primary claim on direct appeal was that the government's evidence was insufficient to prove the substantive charges (Hobbs Act robbery and murder for hire) for which she was convicted. This claim was rejected by the Second Circuit. See supra pp. 2-3.

12

P-049

the testimony of uncalled witnesses are insufficient to demonstrate prejudice."). As a result, this claim too is denied.

   3.    *Trial's Counsel's Interference with Petitioner's Right to Testify.*

Finally, Petitioner's claim of ineffective assistance of Trial Counsel resulting from Counsel's supposed interference with Petitioner's right to testify is also denied. It is true that the right to testify is well-grounded in the Fifth, Sixth and Fourteenth Amendments, Rock v. Arkansas, 483 U.S. 44, 51, 52 (1987), and cannot be waived by counsel, United States v. Ortiz, 82 F.3d 1066, 1070 (D.C. Cir. 1996). However, as other courts have noted, a "'barebones assertion' that his attorney told him not to testify in his own defense, even if that assertion is made under oath, has been held to be insufficient to justify a hearing or other action on a petitioner's claim that his right to testify in his own defense was denied him." Scire v. United States, No. 96-CV-3446, 1997 WL 138991, *11 (E.D.N.Y. March 24, 1997) (citing Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991)); see also Acevedo v. Demskie, 96 CV 3141, 1999 WL 325055, at *2 (E.D.N.Y. May 11, 1999); Millian v. United States, No. CV 95-3486, 1997 WL 793113 (E.D.N.Y. Nov. 18, 1997). The Court finds Petitioner's barebones assertion is insufficient to justify any action on Petitioner's claim that her right to testify in her own defense was denied her.

### B.    Due Process Violation

Petitioner also contends that relief should be granted on the ground that her

13

constitutional right to her trial transcripts has been violated, meaning that she could not fully raise all of her claims in her collateral attack. However, as the Supreme Court has held in United States v. MacCollom, 426 U.S. 317 (1976), the failure to supply a free transcript to an indigent federal prisoner for the purposes of a collateral attack on his conviction does not constitute a due process violation. Federal prisoners have "no unconditional right based on the Due Process Clause of the Fifth Amendment to obtain at public expense transcripts of the prior judicial proceedings which led to his incarceration to aid him in preparing a petition under 28 U.S.C. § 2255." Crossley v. United States, 538 F.2d 508, 509 (2d Cir. 1976). Instead, following the restrictions on habeas petitioners imposed by 28 U.S.C. 753(f), Petitioner is entitled to a free transcript only after the District Court has certified that the "suit of appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal."

In Petitioner's own language, "[w]ithout production of the witness testimony to show the existence of perjured testimony, petitioner is unable to perfect her post-conviction relief." Pet. § 2255 Mot. at 1, Docket No. 7. As discussed supra, Petitioner's prosecutorial misconduct claim is procedurally barred in that Petitioner has not adequately demonstrated "cause" or "prejudice." While the list of circumstances that might be used to establish cause is not a closed one, see U.S. v. Helmsley, 985 F.2d 1202, 1206 (2d Cir. 1993), the general rule is that a collateral attack "must be supported by evidence not available by reasonable diligence at trial." Id. at 1206. But see United

14

States ex rel. Washington v. Vincent, 525 F.2d 262 (2d Cir. 1975) (grants relief even though defendant knew or suspected prosecutorial misconduct and was not wholly without remedies at trial because of the egregious and highly damaging nature of the misconduct). In this instance, the trial transcript will not provide evidence that was not available at trial, nor is it likely to reveal any misconduct – much less the sort of egregious and prejudicial misconduct that warrants deviation from the general rule on procedural default. Therefore, this Court finds that Petitioner's claim has not been shown to be non-frivolous and requiring Petitioner to be furnished a copy of her trial transcripts, and Petitioner's claim for relief on this ground is denied.

## III.  Certificate of Appealability

The only remaining issue is the question of whether to grant a certificate of appealability. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A substantial showing "does not require a petitioner to demonstrate that he would prevail on the merits, but merely that 'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" Santana v. U.S., No. 04 CV 1111, 2005 WL 180932, at *7 (S.D.N.Y. Jan. 26, 2005) (quoting Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002)) (internal quotation marks and citation omitted).  Petitioner

15

P-049

has made no substantial showing of the denial of a constitutional right in this case.

## CONCLUSION

After reviewing the filings and the relevant portions of the record, which were entirely sufficient to dispose of this motion, the Court hereby DENIES both the motion and the issuance of a certificate of appealability. Morever, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is hereby DISMISSED with prejudice. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: April/___, 2006
       Brooklyn, New York

s/SJ
_____
Senior U.S.D.J.

16